IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

FRANK STEFFENSEN,

    Plaintiff,

v.

CITY OF FAIRBANKS, et al.,

    Defendants.

Case No.4:09-cv-4 (RJB)

ORDER ON DEFENDANT
KASEY MAYHEW'S
MOTION FOR
SUMMARY JUDGMENT

This matter comes before the court on defendant Kasey Mayhew's Motion for Summary Judgment. Dkt. 95. The court has considered the relevant documents and the remainder of the file herein.

PROCEDURAL HISTORY

On January 13, 2008, plaintiff filed a civil rights case in the Superior Court for the State of Alaska. Dkt. 1. On February 10, 2009, defendants removed the case to federal court. Dkt. 1. On March 10, 2009, the court issued an order, identifying the deficiencies in the complaint and directing plaintiff to file an amended complaint. Dkt. 25. On March 19, 2009, plaintiff filed an Amended Complaint. Dkt. 29. During the course of these proceedings, all claims, with the exception of the claims against defendant Kasey Mayhew, have been dismissed. On November 23, 2009, Mr. Mayhew filed a Motion for Summary Judgment, requesting that the court dismiss all claims against him. Dkt. 95.

On December 7, 2009, the court notified plaintiff of the requirements for responding to a motion for summary judgment, and directed him to file any response by December 28, 2009. Dkt. 97. Plaintiff has not filed a response to the motion for summary judgment as of the date of this order.

ORDER
Page - 1

## AMENDED COMPLAINT

In his amended complaint, plaintiff alleges that, on August 23, 2005, City of Fairbanks police officers John Merrion, Burlyn Rigdon, Stewart Lewis, and Ron Dupee conducted an unlawful search and seizure, in violation of his Fourth Amendment rights; that he was convicted, pursuant to the unlawful search and seizure, of possession of cocaine; and that the conviction was overturned on appeal. Dkt. 29, at 2-3. Plaintiff alleges that the unlawful search was authorized by Casey Mayhew, an employee of the Alaska Department of Corrections. Dkt. 29, at 2.

## STATE COURT PROCEEDINGS

*Relevant Facts.* The facts related to the issue in this case were set forth in (1) the January 25, 2006, Memorandum Decision of the Superior Court for the State of Alaska, Fourth Judicial District at Fairbanks, in *State of Alaska v. Frank Steffensen*, 4FA-05-2873CR; (2) the December 5, 2007, opinion of the Court of Appeals of Alaska in *Steffensen v. State*, 2007 WL 4277547 (Alaska App.); (3) the March 4, 2008, Findings on Remand, of the Superior Court for the State of Alaska, Fourth Judicial District at Fairbanks, in *State of Alaska v. Frank Steffensen*, 4FA-05-2873CR; and (4) the opinion of the Court of Appeals of Alaska in *Steffensen v. State,* 2008 WL 5101778 (Alaska App.). Those facts, which neither party has contested, and are as follows:

On August 23, 2005, Fairbanks police officers John Merrion and Burlyn Rigdon saw plaintiff start to drive his truck the wrong way down a one-way street. The truck stopped, corrected itself, and drove away in the proper direction. The officers were responding to a higher priority call, so they took no action regarding plaintiff's truck at that time.

About thirty minutes later, the officers saw plaintiff's truck again, in a parking lot. Three people were in the front seat of the truck, including plaintiff, who was in the driver's seat. The officers pulled in without activating their overhead lights and parked several car lengths away from the truck. They approached the truck on foot. Officer Merrion mentioned the earlier wrong turn to plaintiff and asked him for identification. Officer Merrion noticed that plaintiff was fumbling with his wallet, was having difficulty getting his license out, and was avoiding eye contact. Officer Merrion had a lengthy conversation with plaintiff about whether plaintiff had insurance on the pickup; plaintiff was unable to provide proof of insurance. At some point in the conversation, Officer Merrion suspected that plaintiff

might be under the influence of alcohol and asked him to step out of the vehicle to perform field sobriety tests. Plaintiff's performance on the sobriety tests did not provide Officer Merrion with cause to arrest him for driving under the influence. A portable breath test indicated no alcohol.

Plaintiff consented to a search of his person. Officer Merrion conducted a "not very intrusive" (Dkt. 96-3) pat down search of plaintiff that yielded about $400 in cash, but no illegal drugs. Officer Merrion asked plaintiff for permission to search the vehicle. Plaintiff declined. Officer Merrion issued plaintiff a citation for not having proof of insurance, and told him he was free to go. Plaintiff could not drive the truck from the parking lot because he had no proof of insurance.

While Officer Merrion dealt with plaintiff, Officer Rigdon was on the other side of the vehicle contacting the passengers, Lisa Lozano and Roberta Titus, both of whom he recognized from prior contacts that had involved drugs. Officer Rigdon called for backup; Officers Stewart Lewis and Ron Dupee responded to the call. The passengers' names were run through dispatch and the officers learned that Ms. Titus was on probation. As a condition of her probation, Ms. Titus was subject to warrantless searches of any vehicles in which she was riding. Officer Dupee contacted the on-call Probation Officer, Kasey Mayhew, who advised him to search Ms. Titus and the vehicle in which she was riding. The officers searched the truck and found crack cocaine on the floorboard near the driver's seat and two crack pipes on the middle seat where Ms. Titus had been sitting. The officers arrested plaintiff and Ms. Titus. Plaintiff was searched again, this time incident to the arrest. Officer Merrion found several baggies of cocaine in plaintiff's pockets. Plaintiff was charged under state law with a drug offense.

*Motion to Suppress in State Trial Court.* During his trial court proceedings, plaintiff challenged, through a motion to suppress, the legality of the stop, the search, and the seizure of cocaine and cocaine paraphernalia. The trial judge denied the motion, finding that no investigative stop occurred initially and that the probation search (related to Ms. Titus) was valid. In analyzing whether an investigatory stop occurred at the outset of the police contact, the trial judge found that police officers initially did not conduct an investigatory stop and that it was only after the officers began speaking with plaintiff that they suspected he may be intoxicated. The trial judge found that, when plaintiff ultimately passed the breath test, he would have been free to leave had the officers not discovered his passenger's probation status.

Regarding the probation search, the trial judge noted that no factually identical cases existed under

state law. However, by analogy, the court recognized that Alaska courts have held that an individual's probation status allows residence searches in any area of the residence over which the probationer has control. The trial judge recognized a lesser expectation of privacy in vehicles than in homes. The trial judge cited as particularly instructive *United States v. Weaver*, 433 F.3d 1104 (9th Cir. 2006), a case in which the Ninth Circuit upheld a conviction of a driver when evidence from the search of a car incident to the arrest of a passenger was used against the driver, despite the clear lack of consent by the driver. The trial court, in plaintiff's state case, found that the police were justified in searching plaintiff's truck, and denied the motion to suppress. Plaintiff pled no contest to one count of fourth-degree misconduct involving a controlled substance, preserving his suppression issues for appeal.

*Alaska Court of Appeals.* Plaintiff appealed his conviction. The Alaska Court of Appeals ultimately, following remand and additional findings by the superior court, reversed the superior court's denial of the motion to suppress. The reversal was not based on the probation search. The Alaska Court of Appeals did not address the validity of the probation search related to Ms. Titus. The Court of Appeals analyzed the matter solely in terms of the threshold question of the stop itself. The court found that the stop was invalid under Alaska law because Alaska law requires a reasonable suspicion of imminent public danger or recent occurrence of serious harm to persons or property, which the court found to be lacking in this case.

It does not appear that plaintiff was retried on the drug charge. Accordingly, his criminal proceedings were terminated in his favor.

## MOTION FOR SUMMARY JUDGMENT

On November 23, 2009, defendant Kasey Mayhew filed a motion for summary judgment, contending that (1) the probation search did not violate plaintiff's rights because the search was a lawful means of ensuring public safety; and (2) Officer Mayhew is entitled to qualified immunity because the law at the time of the incident did not clearly establish that approval of a probation search in this context was unlawful. Dkt. 95.

As noted above, plaintiff did not file a response to the motion for summary judgment.

## DISCUSSION

*Motion for Summary Judgment.* Mr. Mayhew first contends that the search of plaintiff's truck was

reasonable because Ms. Titus was on probation at the time of the stop; as a condition of probation, Ms. Titus was required to submit to searches of her person and any vehicle she was in; and probation conditions are imposed by court order and do not require consent or agreement of the probationer (see Alaska Statute 12.55.015(a)(2)). Mr Mayhew contends that the officers searched plaintiff's truck not because they were searching for evidence against him but because of Ms. Titus's probation status; and that it was incidental that the police also found evidence implicating plaintiff. Mr. Mayhew cites *United States v. Weaver*, 433 F.3d 1104 (9th Cir. 2006) in support of his argument. In *Weaver*, police searched Weaver's car after recognizing Weaver's passenger, who was wanted on outstanding warrants. The police arrested the passenger and searched the car incident to that arrest, despite Weaver's explicit objection to the search. Forged checks were found behind the driver's seat and Weaver was arrested. The Ninth Circuit affirmed the validity of the search because it was a incident to the passenger's arrest.

Mr. Mayhew next argues that he is entitled to qualified immunity, on the basis that, at the time of the incident involving plaintiff, the law was not clearly established that approval of a probation search of a passenger, when the evidence obtained as a result of that search was used against the driver, would violate the driver's Fourth Amendment rights.

*Legal Standard.* Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting

the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. While the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory. *Pearson v. Callahan*, at 129 S.Ct at 811. "The judges of ... the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier v. Katz*, 121 S.Ct. at 2156.

Regarding Fourth Amendment warrantless searches, law enforcement officers might mistakenly, but reasonably, conclude that a warrantless search was justified by probable cause or exigent circumstances or some other exception; qualified immunity protects officers who, objectively and reasonably, had such beliefs. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

*Discussion.* In this case, it is uncontested that Officer Mayhew was not present on the scene when Officers Merrion and Rigdon stopped the vehicle that plaintiff was driving. It was that stop that the Alaska Court of Appeals concluded was unreasonable. Officer Mayhew was not involved in that stop. Officer Mayhew's only involvement in this case was advising the officers at the scene to conduct a search of the vehicle in which Ms. Titus was riding, as authorized by her probation conditions.

Pursuant to *Pearson v. Callahan*, 129 S.Ct. At 811, the court may address either prong of the qualified immunity first. In this case, the question this court addresses first is whether it was clearly established, under the circumstances of the case, that a reasonable person in Officer Mayhew's position would have known that he was violating plaintiff's Fourth Amendment rights when he authorized a probation search of the vehicle in which Ms. Titus was riding.

In *Samson v. California*, 547 U.S. 843 (2006), the United States Supreme Court concluded that a suspicionless search of a California parolee, conducted pursuant to California law requiring all parolees to agree to be subjected to search or seizure at any time, did not violate the Fourth Amendment. The

1  Supreme Court has not addressed the issue of whether evidence obtained as a result of a search conducted
2  pursuant to a probation condition of a *passenger* may be used in a criminal trial against the driver. The
3  Ninth Circuit, in *United States v. Weaver, supra,* affirmed the validity of a search related to a driver's
4  conviction, when the search was conducted incident to the arrest of a passenger. Neither the Supreme
5  Court nor the Ninth Circuit has addressed the issue presented in this case: whether search conducted
6  pursuant to a probation condition of a passenger violates the Fourth Amendment rights of the driver.
7  *Weaver* is not squarely on point with the instant case, but it is instructive, since *Weaver* upheld a
8  challenge by a driver to a valid search related to a passenger. In light of the state of the legal authority,
9  the law is not clearly established that Officer Mayhew would have violated plaintiff's constitutional rights
10 by authorizing, or directing officers to conduct, a search pursuant to the terms of Ms. Titus's probation.
11 Further, it was not clearly established, at the time of the incident in question, that Mr. Mayhew, as a
12 probation officer for a passenger, was required to take steps to ascertain whether the initial stop of
13 plaintiff was a valid constitutional stop.
14     Because the court has determined that the law was not clearly established at the time of the
15 incident in question, the court need not address the first prong of the qualified immunity analysis:
16 whether a constitutional right would have been violated on the facts alleged, taken in the light most
17 favorable to plaintiff.
18     Officer Mayhew is entitled to qualified immunity. Officer Mayhew's motion for summary
19 judgment should be granted.
20     Therefore, it is hereby
21     **ORDERED** that defendant Kasey Mayhew's Motion for Summary Judgment (Dkt. 95) is
22 **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.
23     The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any
24 party appearing *pro se* at said party's last known address.
25     DATED this 5th day of January, 2010.

Robert J Bryan
United States District Judge